UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

               Case No. 24-cr-00017
               Hon. ROBERT J. JONKER

vs.


DINSIMORE GUYTON ROBINSON ,

       Defendant.
_____/
DANIEL MEKARU
U.S. Attorney (Grand Rapids)
The Law Bldg.
330 Ionia Ave., NW
P.O. Box 208
Grand Rapids, MI 49501-0208
616-808-2013
Email: daniel.mekaru@usdoj.gov

SANFORD A. SCHULMAN
Attorney for Defendant:
      DINSIMORE GUYTON ROBINSON
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
(313) 963-4740
Email: saschulman@comcast.net
_____/

**DEFENDANT, DINSIMORE GUYTON ROBINSON's**
**SENTENCING MEMORANDUM**

1

NOW COMES the Defendant, DINSIMORE GUYTON ROBINSON, by and through his attorney, SANFORD A. SCHULMAN, and states in support of his Sentencing Memorandum and Request for a Sentencing Variance as follows:

## BACKGROUND AND PROCEDURAL HISTORY

On July 16, 2024, Dinsimore Robinson was charged with Conspiracy to Commit Money Laundering in violation of 18 USC Sec. 1956(h)(a)(1)(B)(i). At his first appearance before this Court after his arraignment and without filing any motions, Dinsimore pled guilty pursuant to a written Rule 11 Plea Agreement on January 22, 2025.

Dinsimore was likely targeted by co-defendant Jarrell Williams because of Dinsimore's technological prowess and that he could be trusted. Dinsimore was employed at the time as information technology personnel and had no prior criminal history or police contact. Indeed, Dinsimore was completely unaware of the nature of the scheme or the source of funds. Dinsimore's role was to accept funds placed into his Chase Bank or Bank of America accounts via Zelle and then was directed to withdraw it or deposit it into a

cryptocurrency exchange wallet.  At the time of the indictment Dinsimore was devasted to learn of his role in the conspiracy and immediately agreed to assist the Government.

The advisory sentencing guidelines as calculated by probation are 12 to 18 months.  Mr. Robinson elected to cooperate at his earliest opportunity and the Government has acknowledged his material assistance.  The cooperation has been public and shared with the co-defendants and their attorneys.  The defense believes this cooperation likely induced others to plead guilty.  The Government is requesting a downward departure and an adjustment of the guidelines to 8-14 months.

## **NATURE AND CIRCUMSTANCES OF THE CASE**

Dinsimore was initially approached during a conversation with the co-defendant Jarrell Williams. Mr. Robinson met Jarrell when he was working part time as a bartender and they became close friends. Dinsimore was working several jobs at that time and Jarrell told him about what he was doing with "the plug" and introduced Dinsimore to him.

It was obvious that the co-conspirators approached Dinsimore because of his technical skills and ability to navigate through several apps more easily than others. Dinsimore received a small percentage of the funds and knew nothing of the source of the funds until after being charged.

PERSONAL CHARACTERISTICS

It is ironic that long after his involvement in this case, Dinsimore was approach by the federal agents in July, 2024, when he first heard the details surrounding the source of the money.  In July of 2024, Dinsimore obtained his Security Plus certification and began exploring a career in Cyber Security.

The federal conviction has had significant collateral consequences for Dinsimore and his ability to pursue his employment goals have been negatively impacted.  Dinsimore has been on pretrial release for nearly a year without incident and he has been deeply affected and changed by this case.  He rarely goes out, focuses his full attention on his employment and family and is far more guarded around friends and even family.

It should be noted that immediately after his arrest, Dinsimore began meeting with the agents and the Government to review documents and assist with the investigation. His assistance resulted in the Government's 5k1.1 motion

The defendant joins in the Government's motion for a variance and the defense is requesting a sentence of home confinement and a term of probation. Such a sentence is sufficient but not greater than necessary to accomplish the goals of 18 USC Sec 3553(a). Given Dinsimore's personal history, the circumstances of the case at bar, his conduct since his arrest, his dedication to his family, a lengthy custodial sentence would serve no purpose.

## **RECOMMENDED SENTENCE**

The Supreme Court has explained that a sentencing judge "should begin all sentencing proceedings by correctly calculating the applicable [Sentencing] Guidelines range." Gall, 552 U.S. at 49 (citing Rita v. United States, 551 U.S. 338, 347-48, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007)). In addition, before imposing a sentence, the district court has an obligation to weigh all the factors listed in section

3553(a). See United States v. Fernandez, 443, 346- 47; see also United States v. Corsey, 723 F.3d 366, 375 (2d Cir. 2013) (per curiam).

In determining the "particular sentence to be imposed," the sentencing judge must consider: "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); "the kinds of sentences available," id. § 3553(a)(3); the range set out in the Sentencing Guidelines, id. § 3553(a)(4); "any pertinent policy statement," id. § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," id. § 3553(a)(6); and "the need to provide restitution to any victims of the offense," id. § 3553(a)(7).

Another section 3553(a) factor requires the judge to consider the various purposes of sentencing, which are: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Id. § 3553(a)(2). Having considered all of the section 3553(a) factors, the district court must reach "an informed and individualized judgment in each case as to what is 'sufficient, but not greater than necessary' to fulfill the purposes of sentencing." United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting 18 U.S.C. § 3553(a)).

Section 3553 also provides that the "court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence—

1) is of the kind, and within the range, [called for by the Sentencing Guidelines], and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range; or

(2) is not of the kind, or is outside the range, [called for by the Sentencing Guidelines], the specific reason for the imposition of a sentence different from that described . . . ." 18 U.S.C. § 3553(c).

Thus, a sentencing judge must comply with at least four distinct statutory duties when imposing sentence:

(1) to correctly calculate the applicable Sentencing Guidelines;

(2) to consider all of the section 3553(a) factors, including the advisory Guidelines range and the purposes of sentencing;

(3) based on consideration of those factors, to impose a sentence that is "sufficient, but not greater than necessary" to serve the purposes of sentencing; and

      (4)    to "state in open court the reasons for its imposition of the particular sentence," including the reasons for imposing sentence at a particular point in the Guidelines range when that range exceeds 24 months and the specific reasons for imposing any non-Guidelines sentence. See 18 U.S.C. §§ 3553(a), (c); Gall, 552 U.S. at 49-50.6 section 3553(a) factors, and to state the reasons for the particular sentence imposed can all give rise to an appellate determination of procedural unreasonableness. Violation of the duty to impose a sentence that is sufficient, but not greater than necessary, can give rise to an appellate determination of substantive unreasonableness. See Gall, 552 U.S. at 51. United States v. Pugh, 945 F.3d 9, 24-25 (2d Cir. 2019)

      Ultimately, after consideration of the section 3553(a) factors, the district court must impose a sentence that is sufficient, but not greater than necessary, to fulfill the purposes of sentencing. In doing so, if the court determines that a lower sentence will be just as effective as a higher sentence, it must choose the lower sentence. See United States v. MinistroTapia, 470 F.3d 137, 142 (2d Cir. 2006)

("[I]f a district court were explicitly to conclude that two sentences equally served the statutory purposes of [section] 3553, it could not, consistent with the parsimony clause, impose the higher."). Whether the sentence is consistent with the parsimony clause of section 3553(a) is a question of substantive reasonableness.

In many cases a 5k1.1 motion by the Government results in years sometimes even decades of prison time reduced. However, in the case at bar the advisory guidelines began at 12 months and the Government is recommending a 33 precent reduction which results in a reduction of only 4 months. However, this reduction does make Dinsimore eligible for a probationary sentence. The Government is not seeking a custodial sentence but has left the final determination of a sentence in the court's discretion.

It is clear that Dinsimore unfortunately trusted the wrong people when he agreed to accept what appeared to be a deal too good to be true. He was intentionally not apprised of the scheme and even hesitated without evening knowing the full details.  His decision has now put him in a terrible position and his association with the co-defendants is, simply, repugnant to him.  He has no criminal history and his reputation has been tarnished.  His closest friends and family know he is not one who would take advantage of others as he has now come to be known.

A custodial sentence would serve no purpose.  Dinsimore is deterred.  He has been deeply affected and changed.  To say that this has been a learning experience is an understatement

F.  LETTER(S) IN SUPPORT

Attached are a sampling of letters from Dinsimore's family, friends and community leaders as well as a letter from Dinsimore himself which provides insight into how the arrest, time spent on pretrial release, and the time awaiting sentencing has deeply impacted Dinsimore.

## **CONCLUSION AND SENTENCING RECOMMENDATION**

The defense would ask this court to consider the advisory sentencing guidelines, his role in the offense, the recommendations of the parties, the lack of significant criminal convictions, the strong family support, the defendant's letter that explains how he has been deterred, punished and has already started the process of rehabilitation in imposing a sentence of probation that is sufficient but not greater than necessary.to accomplish the 18 USC Sec. 3553(A). Such a sentence would allow Dinsimore the opportunity to continue his hopes of better gainful employment and contribute to his family and community in a meaningful way. The defense recommends a sentence of probation or home confinement and any other terms and conditions set by this Court.

                                         Respectfully submitted,

                                         /s/ Sanford A. Schulman
                                         SANFORD A. SCHULMAN
                                         Attorney for Defendant:
                                                 DINSIMORE GUYTON ROBINSON
                                         500 Griswold Street, Suite 2340
                                         Detroit, Michigan 48226
                                         (313) 963-4740
Date:  June 4, 2025      Email: saschulman@comcast.net