UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff, | Case No: 2:24-CR-17-01 |
| v. | Hon. Robert J. Jonker<br>United States District Judge |
| JOHNATHAN DEMITRIUS GREEN,<br>    Defendant.<br>_____/ | |

**UNITED STATES' RESTITUTION MEMORANDUM**

Defendant Johnathan Green joined and profited from a money laundering conspiracy predicated by a scheme in which members extorted vulnerable minors and young men for profit. The actions of money laundering participants like Green made the scheme possible, profitable, and kept the conspiracy moving forward, pushing Green's co-conspirators to find more and more victims, including Jordan DeMay and M.C.

The devastation wrought on Jordan DeMay's family from his death has had a significant financial impact on them. Accordingly, Jordan DeMay's father—John DeMay—has submitted a request and supporting documentation for counseling, travel, and the items destroyed in Jordan's room where he died by suicide. Jordan DeMay's mother—Jennifer Buta—has submitted a request and supporting documentation for travel associated with a Court hearing, and counseling. The Court has previously ordered Green's co-conspirators to pay restitution to M.C., John DeMay, and Jennifer Buta. The fact that Green pled guilty to the indictment

1

does not change the result here. The victims' requests are limited, appropriate, directly related to the conspiracy, and within the framework of Title 18 U.S.C. Sections 3663 and 3663A. The Court should grant the restitution requests.

## I. FACTUAL BACKGROUND

### A. Sextortion of Jordan DeMay

Throughout the evening of March 24 and into the early morning of March 25, 2022, the Ogoshis and others involved in the sextortion scheme exerted crushing pressure on 17-year-old Jordan DeMay.[1] *United States v. Ogoshi* et al, No. 2:22CR25, R.83, *United States Restitution Memorandum*, PageID.761-776 (W.D. Michigan, August 22, 2024). After the relentless, hours-long pressure, Jordan told them he would take his own life. *Id.* One of the conspirators encouraged him to do so. Early in the morning of March 25, 2022, Jordan died by suicide. *Id.* Later that morning, Jordan's father found his son dead as the family prepared to leave on a two-week vacation to Florida. *Id.* at PageID.769.

On March 24, 2022, prior to his death, DeMay sent $300 via Apple Pay to Green's email address. Green also received $300 from another identified sextortion victim, M.R., the same night as DeMay.

The transactions are outlined below:

---

[1] Jarell Daivon Williams - 0646 2:24CR00017-2, sentenced Dinsimore Guyton Robinson - 0646 2:24CR00017-3, sentenced Kendall Ormond London Jr - 0646 2:24CR00017-4, sentenced Brian Keith Coldmon Jr - 0646 2:24CR00017-5, sentenced
Related Cases:
Samuel Ogoshi - 0646 2:22CR00025-1, sentenced
Samson Ogoshi - 0646 2:22CR00025-2, sentenced
Ezekiel Ejehem Robert - 0646 2:22CR00025-3, pending extradition
Lorenzo Lamarr Naylor - 0646 2:25CR00006-1, pending trial

| TransactionDate | DebitCredit | InitiatorName | TransactionType | TargetName | Amount |
|---|---|---|---|---|---|
| 3/24/2022 11:02:16 PM | Credit | Jordan Demay | P2P Express | Johnathan Green | $300.00 |
| 3/24/2022 9:48:07 PM | Credit | M.R. | P2P Express | Johnathan Green | $100.00 |
| 3/24/2022 9:43:14 PM | Credit | M.R. | PeerPayment | Johnathan Green | $200.00 |

(source: subpoena to Green Dot Bank, provider of Apple Pay)

During an interview, Green admitted to laundering the sextortion payment made by DeMay the night of the sextortion/suicide, taking a cut, converting the funds to bitcoin, and sending the rest to his co-conspirators in bitcoin furtherance of the agreement. (R.204, Final Amended Presentence Investigation Report, PageID.1226-1322.)[2]

**B. Money Laundering Conspiracy**

Between early 2021 and extending into April 2022, Defendant participated in a money laundering conspiracy. Underlying the money laundering conspiracy was a scheme in which unindicted co-conspirators and co-schemers pretended to be a young woman in social media accounts and sought to have teenage boys and young men engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct. (R.1, Indictment, PageID.1-5.) Once the victims produced and sent images of sexually explicit conduct, the sextortionists used the images to blackmail the victims for money by threatening to send the images to others, including but not limited to the families, friends, and classmates of the victims. (R.204, Final Amended Presentence Investigation Report, PageID.1226-1322.) Defendant connected with someone in Nigeria, who he came to know as

---

[2] On March 1, 2023, FBI executed a search warrant at Green's residence. Green agreed to a non-custodial interview, which took place in an empty bedroom in his house. He was unrestrained.

the Plug. Defendant received the Plug's telephone number from his friend, co-defendant Brian Coldmon. (R.204, Final Amended Presentence Investigation Report, PageID.1226-1322.) As a member of the conspiracy, Defendant received money from victims of the extortion scheme. (*Id.*). He then kept a portion of those funds and sent the rest to the Plug. (*Id.*) Defendant knew those victims were being defrauded by the Plug and the Plug's co-conspirators, and Defendant knew he was laundering the money to obscure the identity of the Plug and other co-conspirators. (*Id.*)

The evidence also shows that, during the conspiracy, and prior to Jordan DeMay's death, Green and the other co-conspirators became aware that their coconspirators and co-schemers were sextorting young and vulnerable victims, including minors, as part of the scheme to secure payment in furtherance of the money laundering conspiracy. In early 2022, members of the conspiracy extorted a university student. (Government Exhibit 1.) The student reported the sextortion to campus police officers. (*Id.*) On or around February 20, 2022, a university police officer reached out to Brian Coldmon and informed him that his account had been compromised and was being used to sextort young victims. (*Id.*) During the call with the officer, Coldmon lied and feigned surprise that his account was being used in such a manner, and told the officer that he had also been contacted by an officer from Ohio and thought it was a joke. (*Id.*)

During a subsequent recorded interview conducted by the FBI, Coldmon explained to FBI agents that he told Green about the call from the police officer

on the same day he received the call, on February 20, 2022, and told Green the detail about the nature of the sextortion scam (*Id.* at p.6)  Both Coldmon and Green expressed concern about the conduct but continued to receive and launder funds in furtherance of the conspiracy and scheme. (*Id.*)  Further, on March 23, 2022, just two days prior to Jordan DeMay's death, an attorney representing a different sextortion victim emailed Green a letter informing Green that his account was being used to solicit pictures of minors and extort them for money and demanding that Green cease and desist the conduct and return the extorted funds. (Government Exhibit 2).  Agents found a copy of the email and letter in Green's email inbox when they conducted a search warrant.

### C. Victim Impact and Restitution Request

Jordan DeMay was a central figure in the life of his mother, father, and stepmother. *United States v. Ogoshi* et al, No. 2:22CR25, R.83, *United States Restitution Memorandum*, PageID.761-776 (W.D. Michigan, August 22, 2024). Jordan's father, John DeMay, and his family suffered an emotional toll from their loss. Accordingly, they spent $2,980 in counseling to date. ( R.204, Final Amended Presentence Investigation Report, PageID.1226-1322.) The family intends to continue counseling once a week for the next five years, totaling $33,800. (*Id.* at PageID.1284-1287) John DeMay as spent $1,670.62 attending Court hearings related to this case, which consists of mileage from his home to Grand Rapids twice and two hotel rooms. (*Id.* at PageID.1289-1291.) He spent

5

$1,176.74 replacing the items that were destroyed in Jordan's room. (*Id.* at PageID.1293-1294.)

Jordan's mother, Jennifer Buta, suffered from tremendous anxiety and depression as a result of losing her son. She sought counseling, and her out-of-pocket expenses for that counseling are $2,055. (*Id.* at PageID.1303-1305). She anticipates her future out-of-pocket expenses associated with counseling will be approximately $3,000. (*Id.* at PageID.1300.)[3]

## II. LEGAL AUTHORITY AND ARGUMENT

### A. The victim's losses were incurred in the course the conspiracy and were foreseeable to Green; the Court should order restitution accordingly.

In addition to the losses requested by M.C. and for J.D., the Court should order restitution to Jordan's father—John DeMay— and to Jordan's mother—Jennifer Buta. These losses were actually and proximately caused by the scheme underlying the money laundering and sextortion conspiracies that led to Jordan DeMay's death.  A court may order restitution only for "loss caused by the specific conduct forming the basis for the offense of conviction." *United States v. Gushlak*, 728 F.3d 184, 195 n.7 (2d Cir. 2013) (internal quotation marks omitted). Both Title 18 U.S.C. Sections 3663 and 3663A define an offense to include "in the case of an offense that involves as an element of a scheme, conspiracy, or pattern of criminal

---

[3] In addition to the request of the DeMays and Buta, the Presentence Report recommends restitution to M.C. for the $1,600 he lost as a result of money laundering scheme and $300 to the DeMays for the money Jordan DeMay paid Green. (*Id.* at PageID.1289-1291.)  Those requests are not contested, and the government will not address them in detail here.

activity, *any person directly harmed by the defendant's criminal conduct in the course of the conspiracy, scheme or pattern.*" 18 U.S.C. 3663(a)(2) and 18 U.S.C. 3663A(b)(2).  As the Sixth Circuit has explained, "[i]f someone is convicted of a conspiracy, the court can order restitution for damage resulting from any conduct that was part of the conspiracy and not just from specific conduct that met the overt act requirement of the conspiracy conviction." *United States v. Elson*, 577 F.3d at 723 (citation and internal quotation marks omitted) (abrogated on other grounds); *See also United States v. Boyd*, 222 F.3d 47, 51 (2d Cir. 2000) ("Where the crime of conviction is a conspiracy, a district court may order the defendant to pay restitution for the reasonably foreseeable losses caused by the conspiracy."); Losses caused in the course of the conspiracy need not match the elements of the conspiracy. *United States v. Spinney*, 795 F.2d 1410, 1417 (9th Cir. 1986) (affirming restitution award when defendant participated in a conspiracy that created the circumstances which led to the injuries of the victims). [4]

Here, the scheme underlying the money laundering conspiracy put enormous pressure on victims and created the circumstances that led to Jordan DeMay's death.  It was reasonably foreseeable to Green that a money

---

[4] Similarly, "Section 3664(h) specifically empowers district courts to make individual defendants liable for all of the losses caused by multi-defendant crimes, and we have consistently affirmed such decisions in the conspiracy context." *United States v. Sawyer*, 825 F.3d 287, 295–96 (6th Cir. 2016) (holding it was not error for the court to hold Sawyer jointly and severally liable for the entire $10,688,576.71 loss caused by the conspiracy); *See also United States v. Rozin*, 664 F.3d 1052, 1066 (6th Cir. 2012) ("[U]pon finding Rozin guilty of conspiracy ... the district court could hold Rozin jointly and severally liable for the entire restitution amount...."); *United States v. Williams*, 612 F.3d 500, 513 (6th Cir. 2010) ("[B]y participating in a conspiracy to commit healthcare fraud, Williams bore the risk of becoming financially responsible for the entire amount of the conspiracy victims' losses.").

laundering conspiracy built on sextortion would result in additional losses to victims.

And although Green's specific knowledge is not necessary for the result here, despite being briefed on the nature of the scheme underlying his conspiracy, Green continued to launder money in furtherance of the conspiracy, including the funds paid by DeMay. Much like it was foreseeable that Jordan would die by suicide, it was similarly foreseeable that the death of a 17-year-old boy would have a significant financial and emotional impact on his family. Indeed, there were at least 20 sextortion-related deaths between October 2021 and March 2023.[5] John DeMay and Jennifer Buta's losses were particularly proximate here; Jordan told the conspirators he was going to take his own life. In response, one of them encouraged him to do so.

### B. The fact that Defendant pleaded guilty to the indictment in a money laundering conspiracy does not change the result.

Mr. DeMay and Ms. Buta would not have incurred these expenses but-for Jordan's death. They were directly harmed in the course of the money laundering and sextortion scheme. Here, Defendant pled guilty to the indictment, which alleged a money laundering conspiracy. (R.1, Indictment, PageID.1-5.)  The underlying scheme was a predicate act. "Conspiracy to commit money laundering does not require that the defendant know exactly what unlawful activity

---

[5] FBI, *Sextortion: A Growing Threat Targeting Minors* (Jan.   23,   2024), https://www.fbi.gov/contact-us/field- offices/memphis/news/sextortion-a-growing-threat-targeting-minors.

generated the proceeds .... The defendant merely must know that the transaction involved profits of unlawful activity". *United States v. Hall*, 134 F.4th 782, 792–93 (5th Cir. 2025), cert. denied, No. 25-157, 2025 WL 2824243 (U.S. Oct. 6, 2025) (citations omitted). Where the basis for the conspiracy is a scheme to defraud, the Court may award restitution for all losses caused by the scheme. *Id.* And Courts, including the 6th Circuit, have awarded restitution for predicate acts. *United States v. Johnson*, 440 F.3d 832, 849 (6th Cir. 2006) (affirming restitution award for predicate acts that were part of the same scheme, conspiracy or pattern as the offense of conviction). *United States v. Odiase*, 788 F. App'x 760, 764 (2d Cir. 2019) (Odiase was convicted of a money laundering conspiracy, and it was reasonably foreseeable to Odiase that the conspiracy involved additional losses.)[6]

Here, the scheme underlying the money laundering conspiracy to which Defendant pleaded guilty depended on the proliferation of funds generated by the sextortion of victims. The crimes were interdependent and part of the same scheme, thus, losses caused by the underlying sextortion are properly awarded for Defendant's conviction in the money laundering conspiracy.

The result in *United States v. Hall* supports in the award in this case. In *Hall*, the defendant laundered kickback proceeds, which were derived from

---

[6] United States v. Moreland, 622 F.3d 1147, 1170 (9th Cir. 2010) (See also Much more evidence was introduced at trial. Given the weight of the evidence, a rational juror could have found beyond a reasonable doubt that Moreland participated in the overall conspiracy to launder money and had knowledge of its objectives.)
As Courts have noted, where a "[w]here a fraudulent scheme is an element of the conviction, the court may award restitution for 'actions pursuant to that scheme. " United States v. Cothran, 302 F.3d 279, 289 (5th Cir.2002) (citation omitted).

9

insurance proceeds obtained as part of the underlying fraud and predicate act for the money laundering conspiracy. *Hall*, 134 F.4th 782. The Court reasoned that Defendant's money laundering was a necessary and integral part of the scheme and the victims were harmed as a result. On appeal, the Fifth Circuit affirmed a District Court's award of restitution to the victim not only for losses caused by the money laundering, but also for losses caused by the underlying scheme. *Id.* at 792–93. Likewise, here, an award of restitution to John DeMay and Jennifer Buta is proper.

C. **The DeMays are themselves victims of the offense and entitled to restitution in their own regard, not simply as representatives of Jordan DeMay**.

John DeMay and Jennifer Buta are entitled to restitution, not only because they are representatives of Jordan DeMay, but also because each is a victim who suffered a loss caused by the scheme underlying the offense of conviction. Both 18 U.S.C. Sections 3663 and 3663A define a victim identically, to include "any person harmed by the defendant's criminal conduct in the course of the scheme, conspiracy or pattern." *Id.* at 3663(B)(2) and 3663A(a)(2). Relying on this provision, Courts have found that relatives affected by the death of a victim family member who suffer foreseeable losses during a conspiracy are victims in their own regard. For example, in *United States v. Starr*, 731 F.Supp.3d 1272 (D. Alabama 2024), the District Court found that the decedent's minor daughters, their guardians, and several state health and insurance agencies were victims of a conspiracy resulting in their minor victim's mother's death, which caused them to

10

suffer losses, including losses for psychological care. Id. at 1274. Likewise, in *United States v. Price*, 906 F.3d 685 (7th Cir. 2018), another conspiracy case resulting in death, the Seventh Circuit affirmed a District Court award for expenses and noted that the victims suffered trauma as a result of the conspiracy. The Court explained that the victim's "losses are not derivative of the decedent's losses: these women assert their claims standing in their own shoes, not the decedents." *Id*. at 689 (*citing Rock Island Bank v. Aetna Cas. & Sur. Co.*, 692 F.2d 1100, 1106 (7th Cir. 1982) (describing in insurance context a derivative remedy as being subject to whatever defenses may be asserted against the original claimant, in contrast to independent claims not subject to such defenses).

Thus, like the victims in *Hall, Starr, and Price*, the Court should award restitution to John DeMay and Jennifer Buta in this case, in addition to restitution for the losses suffered by M.C. and Jordan DeMay.

### III. Restitution Request

The victims seeking restitution are Jennifer Buta, Jordan DeMay's mother; John and Jessica DeMay, Jordan DeMay's father and stepmother; and M.C., a minor who was another victim of the extortion scheme. The amounts and category for the restitution are listed below:

| John DeMay | |
|---|---|
| Counseling expenses incurred | $2,980.00 |
| Future counseling expenses | $33,800.00 |
| Travel | $1,670.62 |
| Replacing items | $1,176.74 |
| Jordan DeMay Extortion Loss | $300.00 |
| Total | $39,927.36 |

| Jennifer Buta | |
|---|---|
| Counseling expenses incurred | $2,055.00 |
| Future counseling expenses | $3,000.00 |
| Travel | $741.42 |
| Total | $5,796.42 |

| M.C. | |
|---|---|
| Extortion loss | $1,600.00 |
| Total | $1,600.00 |

## IV. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court order Defendant Green to pay restitution to John DeMay in the amount of $39,927.36 and Jennifer Buta in the amount of $5,796.42 and M.C. in the amount of $1,600.00.

Respectfully submitted,

TIMOTHY VERHEY

United States Attorney

Date: October 23, 2025

*/s/ Meagan D. Johnson*
MEAGAN D. JOHNSON
DANIEL MEKARU
Assistant United States Attorneys
P.O. Box 208
Grand Rapids, Michigan 49501
(616) 456-2404